UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **TERRELL BRITTON,** | : | |
| **Plaintiff,** | : | |
| | : | **No. 3:21-CV-1257 (VLB)** |
| **v.** | : | |
| | : | |
| **C/O RODRIGUEZ, et al.,** | : | |
| **Defendants.** | | |

## <u>INITIAL REVIEW ORDER</u>

Plaintiff Terrell Britton, a sentenced *pro se* inmate at Cheshire Correctional Institution ("Cheshire") in the custody of the Department of Correction ("DOC"), filed this civil rights complaint under 42 U.S.C. § 1983.[1]  [ECF No. 1 (Compl.)]. Plaintiff's complaint names six employees of DOC: Lieutenant Pearson and Correction Officers Rodriguez, Cartagena, Harris, Jane Doe, and John Doe. *Id.* at 1.  Plaintiff asserts Federal constitutional and state law claims and seeks damages and injunctive relief. *Id.* at. ¶¶ 41-46.

## I.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is

---

[1] Plaintiff paid the filing fee on January 3, 2022.

The Court may "take judicial notice of relevant matters of public record."  *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).  The DOC website shows that Plaintiff is currently housed at Cheshire Correctional Institution, and that on February 6, 2018, Plaintiff was sentenced to seven years of prison confinement. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=368622.

immune from such relief."  28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked

assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## II.   FACTS

The Court considers the alleged facts to be true for purposes of this ruling.

On July 20, 2020, Plaintiff was housed at Corrigan-Radgowski Correctional Center ("Corrigan").  Compl. ¶ 1.  He was directed to bring his property to the "Chow Hall" for "Matrix Compliance Inspection."  *Id.*  After Plaintiff complied, Correction Officer Cartagena initiated the inspection.  *Id.* at ¶ 2.  Correction Officer Cartagena determined that a television was not "in full compliance" with Plaintiff's property matrix.  *Id.* at ¶ 3.  After Correction Officer Cartagena questioned Plaintiff about the legitimacy of the television, Plaintiff produced a property matrix from the previous correctional institution prior to his transfer to Corrigan.  *Id.* at ¶ 4.  However, Correction Officer Cartagena refused to review Plaintiff's documents and insisted on confiscating the television.  *Id.* at ¶ 6.  Plaintiff explained that, a few

weeks prior, Lieutenant John Doe addressed this same television issue but failed to rectify it. *Id.* at ¶ 7. Correction Officer Cartagena disregarded this, however. *Id.*

Plaintiff requested a supervising staff member to resolve the misunderstanding about the television. *Id.* at ¶ 8. Three minutes later, Lieutenant Pearson arrived. *Id.* at ¶ 9. When Plaintiff tried to explain the issue, Lieutenant Pearson stated that Plaintiff could "either go to RHU (segregation)" or "surrender the television" and try to get it back through the Admitting and Processing Unit. *Id.* at ¶ 10, 12. At that time, several correctional officers started to surround Plaintiff. *Id.* at ¶ 13.

Plaintiff remained seated at a table until Correction Officer Cartagena told him to stand up. *Id.* at ¶ 14. As Plaintiff complied with this order, Correction Officer Cartagena violently snatched his left wrist and placed it in a hand cuff restraint. *Id.* at ¶ 15. He twisted Plaintiff's arm as if he were attempting to break it. *Id.* at ¶ 16. Plaintiff experienced excruciating pain and pleaded with Correction Officer Cartagena to take it easy as he was not resisting. *Id.* at ¶ 17. Multiple correction officers, including Harris and Rodriguez, were present at this time. *Id.* at ¶ 18. After Plaintiff screamed out in pain, the other officers jumped on top of him. *Id.* at ¶ 19. The officers maced him, kicked him, and stood on him. *Id.* at ¶ 20. Plaintiff was struck with a "Rib Shot" and punched in the face. *Id.* Lieutenant Pearson directed this assault. *Id.* Plaintiff did not pose any threat to himself or any staff member involved in the assault. *Id.* at ¶ 21.

Plaintiff was subsequently strip searched and housed in a medical Behavior Observation Status ("BOS") cell. *Id.* at ¶ 22. This BOS required Plaintiff to lie in

only a "safety gown" with no blanket or under garments. *Id.* at ¶ 23. Several hours later, at 1:15 AM on July 21, Plaintiff received a disciplinary report for an assault on Correction Officer Cartagena. *Id.* at ¶ 24. When Plaintiff questioned the charge, Correction Officer Lee told him that "we got to cover our ass." *Id.* at ¶ 25.

On July 22, Plaintiff communicated with the medical staff verbally and through an inmate request seeking treatment for his pain resulting from the assault. *Id.* at ¶ 26.

On September 22, Plaintiff sent an inmate request to a Corrigan supervisory official that described his experience. *Id.* at ¶ 27. The next day, Plaintiff sought to preserve video of the incident. *Id.* at ¶ 28.

On July 30, Plaintiff received notification of a Disciplinary Process Summary Report that stated he had been given a choice to participate and have an advisor at the hearing. *Id.* at ¶ 29. "However, [Plaintiff] was given the opportunity [for] any of the above such things." *Id.* at ¶ 30.[2]

On August 10, Plaintiff was transferred to Cheshire where he pursued his administrative remedies in connection with his alleged assault at Corrigan. *Id.* at ¶ 31. Plaintiff could not understand how he had been charged with Assault on DOC Staff. *Id.*

After he asked Unit Manager Roberts about his inmate requests submitted at Corrigan, she advised him that he should put something in writing. *Id.* at ¶¶ 32-33.

---

[2] **This allegation appears to be misstatement that has left out the word "not." Regardless, the meaning of this allegation is not clear.**

On August 24, Plaintiff submitted an Inmate Request form to Unit Manager Roberts to explain what happened to him at Corrigan. *Id.* at ¶ 34. The next day, Plaintiff submitted a Level-1 Grievance about the alleged assault at Corrigan. *Id.* at ¶ 35. This grievance was rejected in September. *Id.* at ¶ 36. Plaintiff appealed the grievance rejection on October 1. *Id.* at ¶ 37. Because this appeal was not answered, Plaintiff submitted a Level-3 Appeal. *Id.* at ¶ 38.

The Code of Silence is the standard operating procedure within the DOC relevant to complaints against correctional staff. *Id.* at ¶ 39.

III. **DISCUSSION**

Plaintiff asserts that Defendants Rodriguez, Cartagena, Harris, Jane Doe, John Doe,[3] and Pearson subjected him to excessive force "without need or provocation" in violation of his rights under the Eighth Amendment. Compl. at ¶ 43. He also claims that Lieutenant Pearson's failure to curb a pattern of inmate abuse by correctional staff constituted deliberate indifference in violation of the Eighth Amendment. *Id.* at ¶ 45. Finally, he alleges state law tort claims of assault and battery and gross negligence against all Defendants on the basis of the physical force used against him. *Id.* at ¶¶ 44, 45.

A. <u>Count One: Excessive Force Eighth Amendment Violation</u>

The Eighth Amendment protects against punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). An inmate alleging excessive force in violation of the Eighth Amendment

---

[3] In paragraphs 43 through 45, Plaintiff's complaint has indicated that Jane and John Doe were among the officers who subjected him to physical force.

has the burden of establishing both an objective and subjective component to his claim. *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000).

A *de minimis* use of force will rarely be sufficient to satisfy the objective element unless that force is also "repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (quoting *Hudson v. McMillan*, 503 U.S. 1, 9-10 (internal quotation marks omitted)). However, it is the force used, not the injury sustained, that "ultimately counts." *Id.* A malicious use of force constitutes a *per se* Eighth Amendment violation because "contemporary standards of decency are always violated." *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citing *Hudson*, 503 U.S. at 9). The extent of the inmate's injuries as a result of the defendant's conduct is not a factor in determining the objective component. *See Wilkins,* 559 U.S. at 37 ("core judicial inquiry" is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances); *Hudson*, 503 U.S. at 9 ("[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" irrespective of whether significant injury is present).

The subjective component requires the inmate to show that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts

made to temper the severity of a forceful response." *Id.* (internal quotations and citation omitted).

An officer's use of a chemical agent against a recalcitrant inmate is a constitutional violation only where the use of the chemical agent is malicious and sadistic. *Hudson*, 503 U.S. at 5-6. That the use may have been objectively unreasonable, without more, is insufficient to establish an Eighth Amendment claim. *See Sims*, 230 F.3d at 22; *Howard v, Nunley*, No. CV–06–00191–NVW, 2010 WL 3785536, at *4 (E.D. Cal. Sept. 24, 2010) (considering use of chemical agent against inmate who deliberately violated direct orders). Correction staff's use of a chemical agent on a "recalcitrant inmate" to force compliance with direct orders is not "malicious and sadistic," but rather a good faith effort to restore order. *Vazquez v. Spear*, No. 12-cv-6883 (VB), 2014 WL 3887880, at *5 (S.D.N.Y. Aug. 5, 2014).

### 1. *Correctional Officers*

Officers are liable not only when they use excessive force themselves, but also when they fail to intervene to stop the excessive use of force by another officer when in a position to observe the conduct and with time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019).

Plaintiff alleges that he was complying with Correction Officer Cartagena's order to stand up when Correction Officer Cartagena handcuffed him and twisted his arm as if he were attempting to break it. Compl. at ¶¶ 14-21. He also alleges the other Correctional Officer Defendants then jumped on him, kicked him, punched him, and sprayed him with mace. *Id.* Although Plaintiff's allegations

reflect that he expressed his disagreement with the grounds for confiscating the television set, the complaint suggests that he was sitting at a table and not posing any physical threat to correctional staff prior to the use of force. *Id.* at ¶¶ 14, 21.

Crediting Plaintiff's allegations as true, the Complaint suggests that Defendants could have used malicious or sadistic force and that Defendants' use of force exceeded what was necessary to further legitimate penological reasons under the circumstances. Upon initial review, the Court will permit this claim to proceed against Defendants Rodriguez, Cartagena, Harris, Jane Doe, and John Doe in their individual capacities.

### 2. *Lieutenant Pearson*

Plaintiff also sufficiently alleges that Lieutenant Pearson violated his Eighth Amendment rights for failing to intervene. "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)). Not only did Lieutenant Pearson fail to intervene, but also Plaintiff alleges the Lieutenant commanded the officers to punch him and administer a "Rib Shot." *See* Compl. at ¶ 20. Accordingly, the Court will permit Count One against Defendant Pearson to proceed.

### B.   Count Two: Torts for Assault & Battery and Gross Negligence

This Court can exercise supplemental jurisdiction over a state law claim if: (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim

9

has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact. *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), abrogated on other grounds, *Graham v. Connor*, 490 U.S. 386 (1989).

Because Plaintiff asserts state law claims that derive from the same factual predicate as his plausible Eighth Amendment excessive force claims, the Court may exercise supplemental jurisdiction over Plaintiff's plausible state law claims that do not raise a novel and complex issue of state law. *See* 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim" that "raised a novel or complex issue of State Law....").

Plaintiff alleges claims of assault and battery and asserts that Defendants acted with gross negligence. Compl. at ¶¶ 41, 44. The Court will address each tort in turn.

### 1. *Assault & Battery*

Under Connecticut law, "liability for battery arises if (a) a person acts intending to cause a harmful or offensive contact with the person of the other or a third person ... and (b) a harmful contact with the person of the other directly or indirectly results." *Simms v. Chaisson*, 277 Conn. 319, 331 (2006) (citing Restatement (Second), Torts § 13 (1965)). "Liability for assault arises if (a) a person acts intending to cause a harmful or offensive contact with the person of the other ... and (b) the other is thereby put in such imminent apprehension." *Id.* To "constitute an actionable assault and battery there must have been an unlawful force applied to one person by another." *Moriarty v. Lippe*, 162 Conn. 371, 389

10

(1972).  A defendant may also be liable for aiding and abetting with an assault and battery.  *See Master–Halco, Inc. v. Scillia, Dowling & Natarelli, LLC,* 739 F. Supp. 2d 109, 121 (D. Conn. 2010) ("[W]hat must be proven for aider-abettor liability is that the individual gave substantial assistance to the tortfeasor in carrying out the tort with the knowledge—or reckless indifference to the possibility—that the assistance would aid in carrying out that tort").

Plaintiff has plausibly alleged the elements of assault and battery against the correction officer Defendants.  To the extent a certain Defendant did not engage in the actual assault or battery, Plaintiff may proceed under a theory of aiding and abetting liability.

### 2. *Gross Negligence*

While Plaintiff does not explicitly assert a Negligence Claim, he claims that Defendants acted with gross negligence in paragraph 41 of the Complaint.  To the extent Plaintiff seeks to recover for Defendants' negligent acts, any negligence claims against defendants in their individual capacities are barred by Connecticut General Statute § 4–165, which provides: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." "[W]anton, reckless, or malicious" acts go beyond gross negligence, and denote "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Martin v. Brady*, 261 Conn. 372, 379 (2002) (internal quotation marks and citation omitted).  Thus, Plaintiff cannot hold the Defendants, who are state employees, "personally liable

for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319 (2003).   Accordingly, the negligence claims are dismissed as not plausible.

      C.    <u>Count Three: Pattern and Practice Eighth Amendment Violation</u>

      Plaintiff also asserts that Lieutenant Pearson violated the Eighth Amendment when he failed to curb a pattern and practice of correctional officer abuse of inmates.   However, "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Recently in *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020), the Second Circuit clarified the pleading standard applicable to supervisory defendants in cases concerning alleged violations of constitutional rights.   The Second Circuit explained: "[A]fter *Iqbal*, there is no special rule for supervisory liability.   Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' …. The violation must be established against the supervisory official <u>directly</u>." *Id.* at 618 (emphasis added) (quoting *Ashcroft*, 556 U.S. at 676).

      After *Tangreti*, Plaintiff must allege facts showing that a defendant or defendants personally "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety; the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."   983 at 618-19.

The Court has already held that Plaintiff may proceed against Lieutenant Pearson on his Eighth Amendment claim arising from that alleged use of excessive force on July 20, 2020.  But Count Three involves a different claim: that Lieutenant Pearson violated Plaintiff's Eighth Amendment rights by failing as a supervisor to curb a practice by correctional staff to abuse inmates.  Unlike Count One, which will proceed, Count Three is not plausible.  Plaintiff has not provided any specific facts describing inmate abuse by correctional staff other than the one instance of the alleged misuse of force applied to Plaintiff on July 20, 2020.  Thus, Plaintiff has not plausibly alleged that Lieutenant Pearson acted a practice or pattern of inmate abuse by correctional staff.

### D.    Injunctive Relief Against Defendants in Their Official Capacities

Plaintiff requests injunctive relief seeking an order for the Court to "enjoin Defendants in their official capacities to provide [him] with medical treatment for his injuries sustained, [including] but not limited to[,] thorough MRI scans and x-rays."  Compl. at ¶ 46.

As an initial matter, any claims for money damages against Defendants who are state employees, in their official capacities, are barred by the Eleventh Amendment. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  This applies to federal and state law claims.  *See id.*; *Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) (state claims against defendants in official capacities are barred under the Eleventh Amendment).

The U.S. Supreme Court recognizes a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit: when a plaintiff sues a state

13

official acting in an official capacity for <u>prospective</u> injunctive relief for <u>continuing</u> violations of federal law.  *See Ex parte Young*, 209 U.S. 123 155–56 (1908).  Simply put, an injunctive relief against a state official in his official capacity only extends to an ongoing violation of the constitutional rights that will happen in the future.  *See, e.g., Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011).  The exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past."  *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993).

Plaintiff has stated plausible Eighth Amendment claims for the use of excessive force in violation of the Eighth Amendment on July 20, 2020, but he has not alleged an ongoing violation of his constitutional rights by any Defendant to sustain his official capacity claims for injunctive relief.  Thus, any official capacity claims must be dismissed as not plausible.

IV.     ORDERS

The Court enters the following orders:

(1) For the foregoing reasons, the case shall proceed on Plaintiff's Eighth Amendment excessive force claims against Correction Officers Rodriguez, Cartagena, and Harris, Jane Doe, and John Doe and Lieutenant Pearson in their individual capacities.  Plaintiff may also proceed against all Defendants in their individual capacities for his state law claims of assault and battery and/or or for aiding and abetting in the assault and battery.

All other claims, including official capacity claims, are DISMISSED without prejudice.

(2)  The Department of Correction shall immediately preserve all audio and video recordings of any incident alleged in the Complaint.

(3)  Because Plaintiff has paid the fee in this case, and he has not been granted *in forma pauperis* status, he is responsible for identifying the Doe Defendants and serving the complaint on all Defendants in their individual capacities within 90 days of the date of this order pursuant to Rule 4, Fed. R. Civ. P.  If Plaintiff has questions about service of the complaint, he may contact the Inmate Legal Aid Program ("ILAP").  Failure to effect service within the time specified may result in the dismissal of this action as to a Defendant who has not been served.

The Clerk is directed to send Plaintiff instructions for service of the complaint on the Defendants in their individual capacities, together with one copy of the complaint, one copy of this order, six blank Notice of Lawsuit forms, and six blank Waiver of Service of Summons forms.

(4) Plaintiff shall affect service of the complaint on Defendants in their individual capacities by mailing a Notice of Lawsuit form, a Waiver of Service of Summons form, a copy of the complaint, and a copy of this order to each Defendant.  Plaintiff shall file a notice with the Clerk indicating the date on which he mailed the Notice of Lawsuit and Waiver of Services of Summons forms to each Defendant in their individual capacity. He shall also file the signed Waivers of Service of Summons forms that he receives from each Defendant in their individual capacity with the Clerk.

(5) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(6) Defendants shall file a response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If Defendants choose to file an answer, Defendants shall admit or deny the allegations and respond to the cognizable claims recited above.   Defendants may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within six months (180 days) from the date of this Order.  Discovery requests need not be filed with the Court.

 (8) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(9) All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

(10) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(11) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court.  Failure to

do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  He should also notify Defendants or defense counsel of his new address.

(12) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court.  Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f).  Therefore, discovery requests must be served on Defendants' counsel by regular mail.

_____
**Vanessa L. Bryant**
**United States District Judge**

SO ORDERED at Hartford, Connecticut this 25th day of April, 2022.